IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02786

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

        Plaintiffs,

vs.

OCEDON RESTAURANT MANAGEMENT, LLC,
a Colorado Limited Liability Company,

        Defendant.

_____/

# COMPLAINT

### Introduction

Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation ("Plaintiff" or "Plaintiffs"), on their behalf and on behalf of all other-mobility impaired individuals similarly situated hereby sues the Defendant, OCEDON RESTAURANT MANAGEMENT, LLC, a Colorado Limited Liability Company ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq*. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 *et seq.* ("CADA").

### The Parties

1.    Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris.

2.    Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation.

1

This entity was formed under the laws of the State of Florida and remains in good standing.

3.      Defendant, OCEDON RESTAURANT MANAGEMENT, LLC, a Colorado Limited Liability Company, either owns, leases, leases to, or operates a place of public accommodation, in this instance a quick service restaurant, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

### Jurisdiction and Venue

4.      Defendant's property is a quick service restaurant, also known as Burger King #5870 ("Burger King"), located at 5255 West 80th Ave., Arvada, CO 80003, within Jefferson County ("Subject Property").

5.      Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8.      The Defendant, OCEDON RESTAURANT MANAGEMENT, LLC, owns and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

9.      Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord

---

[1] See, also, 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104

injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand.

10. Mr. Meggs requires the use of a wheelchair, at all times, to ambulate and is a member of the Plaintiff organization, Access 4 All, Inc.

11. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Context

12. Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their repeated infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

13. Mr. Meggs encounters architectural barriers at many of the places he visits. Seemingly trivial architectural features such as parking spaces & access aisles, curb ramps, sidewalks, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous, and even dangerous for him and other wheelchair users.

14. The barriers to access that Mr. Meggs experiences at differing places of public accommodation are often quite similar in nature. For example, he is repeatedly faced with sloping in parking lots, cracks in sidewalks and asphalt, and improper restrooms (even when designated "accessible" or "handicapped"). He is often angered and disheartened by the repetitiveness of the complaints he has been forced to make to employees and management, usually to no avail. Mr.

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

Meggs has become reserved to the fact that the only way to affect change is through the ADA; as Congress intended.

15. Mr. Meggs has visited the Subject Property on multiple occasions, his most recent visit to the interior of Burger King occurred on or about April 13, 2022. On this occasion, Mr. Meggs visited Burger King as a bone fide purchaser/patron to avail himself of the goods and services offered to the public within but found that the Subject Property contained many violations of the ADA, both architecturally and in policy.[4]

16. Although a California resident, Mr. Meggs travels to Colorado several times per year, both for pleasure and for business meetings pertaining to the operation of Access 4 All, Inc.

17. The Subject Property is not the type of accommodation that requires reservations, but Mr. Meggs intends to return on or about November 1, 2022, and on or about February 1, 2023, during visits to the Denver metropolitan area where he is a frequent traveler and regularly conducts business pertaining to Access 4 All, Inc.

18. Mr. Meggs intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

19. Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

20. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

21. Mr. Meggs has a realistic, credible, existing, and continuing threat of discrimination from

---

[4] Mr. Meggs subsequently returned to the exterior of the property in August 2022, but no change in conditions was observed.

the Defendant's non-compliance with the ADA with respect to this property, as described, but not necessarily limited to, the barriers he has personally experienced which are listed in paragraph 26 of this Complaint.

22.     Following any resolution of this matter Mr. Meggs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in any compromise made between the parties or as ordered by this Court.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

23.     The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

24.     The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

25.     A preliminary inspection of the Subject Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in paragraph 26 are both technically feasible and readily achievable.

26.     The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to the Subject Property:

**Parking and Exterior Paths of Travel**

    a.  The designated accessible parking spaces throughout the Subject Property are not maintained, contain surface cracks, and slopes/cross-slopes greater than allowable limits;

the foregoing barriers are a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Slopes within parking areas, especially the spaces themselves, are hazardous to Mr. Meggs, thus, the presence of inaccessible parking spaces has forced him to park in open areas of the parking lot where he could freely access his vehicle without the fear of becoming blocked out by other vehicles. The remediation of these barriers is both technically feasible and readily achievable.

b. The designated accessible spaces at the Subject Property lack proper access aisles. The access aisles are not maintained, contain surface cracks and gaps, and contain excessive sloping and cross-sloping; violations of the ADAAG and Section 502 of the 2010 ADA Standards. As in the above, because of the hazardous nature of the accessible parking area (the conditions within the parking spaces and access aisles are a tipping hazard which cause Mr. Meggs to fall from his wheelchair) Mr. Meggs has been forced to park away from Burger King to ensure that he could freely and safely access his vehicle. The remediation of these barriers is both technically feasible and readily achievable.

c. The Subject Property does not provide the required amount of compliant accessible parking spaces, in violation of ADAAG Section 4.1.2 and Section 502 of the 2010 ADA Standards. Again, due to the lack of compliant accessible parking spaces Mr. Meggs has been forced to park away from Burger King to ensure that he could freely and safely access his vehicle. The remediation of these barriers is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

d. Curb ramps are not provided in all areas of the Subject Property and those which are provided do not comply with the ADAAG nor the 2010 ADA Standards; as such they are unsafe for use by Mr. Meggs. The curb ramps which do exist at the Subject Property contain

    excessive sloping and cross-sloping and protrude into access aisles; in violation of ADAAG Section 4.8 and Sections 406 and 406.5 of the 2010 ADA Standards. These curb ramps have forced Mr. Meggs to navigate through excessive sloping, abrupt changes of level and interfered with his loading/unloading from vehicles - these are all tipping hazards which have caused Mr. Meggs distress and could cause a fall from and damage to his wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

e. The exterior accessible routes at the Subject Property contain abrupt changes of level, gaps in the path of travel, and excessive sloping/cross-sloping which exist in violation of ADAAG Section 4.3 and Sections 402 and 403 of the 2010 ADA Standards. While traveling from the parking area to Burger King, Mr. Meggs has been forced to travel through tipping hazards which could cause a fall from and damage to his wheelchair. He has also been forced to travel around the obstacles and into the traffic area of the parking lot which has put him in danger of encountering moving vehicles. The remediation of these barriers is both technically feasible and readily achievable.

**f.** The Subject Property fails to provide a safe, compliant, and accessible route to the street or sidewalk; in violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards. Due to this barrier Mr. Meggs could not access the Subject Property from those areas, limiting his options for access. The remediation of this barrier is both technically feasible and readily achievable.

**Access to Goods and Services**

g. Payment counters, writing surfaces, and other customer amenities in the dining area of Burger King not the appropriate heights and are beyond Mr. Meggs' reach - equal

7

facilitation is not provided; in violation of ADAAG Section 7.2(1) and Sections 308 and 902 of the 2010 ADA Standards. Mr. Meggs could not make use of these surfaces or amenities. The remediation of these barriers is both technically feasible and readily achievable.

h. Restaurant table-top surfaces within Burger King are not the appropriate height and lack the requisite knee and toe clearance; in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Mr. Meggs was unable to dine comfortably.

**Restrooms**

i. The restroom provided within Burger King are not ADA compliant and are unsafe for use by Mr. Meggs. The barriers to access personally experienced by Mr. Meggs within the restroom include a lack of proper toilet controls, improper toilet centerlines, improperly mounted grab bars, improper stall door hardware, and improperly mounted dispensers; in violation of ADAAG Sections 4.16 and 4.17 and Section 601 of the 2010 ADA Standards. The remediation of these barriers is both technically feasible and readily achievable.

j. The restroom within Burger King contains an improper toilet centerline; a violation of ADAAG 4.16 and 4.17 and Section 604 of the 2010 ADA Standards. Improper centerlines make toilet transfer exceedingly difficult because the toilet's location is not proper in relation to the grab bars; thus Mr. Meggs has been unable to make full use of these restrooms without assistance. The remediation of these barriers is both technically feasible and readily achievable.

k. Grab bars within the restroom Burger King are improperly mounted, a violation of ADAAG Section 4.16 and Sections 604 and 609 of the 2010 ADA Standards. As in the

preceding, Mr. Meggs could not safely/freely use the toilet due to the improper location of the grab bars. The remediation of these barriers is both technically feasible and readily achievable.

l. The restroom located within Burger King provides dispensers (hand dryer, toilet tissue, soap) which are mounted improperly beyond Mr. Meggs' reach, a violation of ADAAG and Section 308 of the 2010 ADA Standards. While using these restrooms Mr. Meggs could not access the dispensers due to their improper location. The remediation of these barriers is both technically feasible and readily achievable.

m. The toilet stall door within the restroom Burger King is not self-closing and contains improper hardware, a violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Meggs could not use the stall without assistance. The remediation of this barrier is both technically feasible and readily achievable.

n. The lavatory located within the restroom at Burger King lacks the proper knee and toe clearance required and lacks the requisite drainpipe insulation, in violation of the ADAAG and Section 606 of the 2010 ADA Standards. Mr. Meggs could not wash his hands in the restroom because he could neither approach nor reach the sink. The remediation of this barrier is both technically feasible and readily achievable.

27. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at

36 C.F.R. § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

28. The discriminatory violations described in paragraph 26 may not be an exhaustive list of the ADA violations that exist at the Subject Property, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require a thorough inspection of the Defendant's place of public accommodation to photograph and exactly measure the architectural barriers which exist at the Subject Property in violation of the ADA.

29. Mr. Meggs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

30. Defendant has discriminated against Mr. Meggs, and all those similarly situated, by denying him/them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

31. Defendant continues to discriminate against Mr. Meggs, and all those similarly- situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

32. Defendant continues to discriminate against Mr. Meggs, and all those similarly- situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages,

---

[5] 28 C.F.R. § 36.104
[6] 42 U.S.C. § 12181(b)(2)(A)(iv)

or accommodations to individuals with disabilities.[7]

33. Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

34. If the Defendant's facility is one which was designed and constructed for first occupancy after January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

35. Pursuant to 28 C.F.R. § 36.402(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal when such alterations have taken place at the Subject Property, and to what corresponding technical and scoping specification the Defendant must meet or exceed in order to bring the Subject Property into compliance with the ADA.

36. Pursuant to 28 C.F.R. § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

---

[7] 42 U.S.C. § 12181(b)(2)(A)(ii)

[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

[9] as defined by 28 C.F.R. § 36.401(a)(2)

[10] 28 C.F.R. § 36.402(a)(2)

37.  28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

38.  Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

39.  Mr. Meggs is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

40.  Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

41.  Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Mr.

Meggs injunctive relief, including an order to require the Defendant to alter Burger King and make the Subject Property readily accessible to and useable by the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[11]

**WHEREFORE,** Plaintiffs respectfully demand:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to cure all ADA violations existing at the Subject Property listed herein or later found through discovery; to make the Subject Property accessible to and usable by individuals with disabilities; and to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

---

[11] 42 U.S.C. § 12188(b)(2)

## COUNT II

### Violation of Colorado Anti-Discrimination Act,
### C.S.R. § 24-34-601 *et seq*. (CADA)

42.     The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

43.     JOHN MEGGS is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

44.     Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

45.     Colorado law provides that no person shall be discriminated against in regard to public accommodations on the basis of disability.[12]

46.     Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

47.     Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

48.     Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

49.     Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

---

[12] C.S.R. § 24-34-601(2)(b)

50. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

51. As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

52. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully demand:

   a. That this Court assume jurisdiction.

   b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the CADA.

   c. An injunction ordering Defendant to immediately comply with the CADA by removing all architectural barriers listed herein or later found through the normal course of discovery.

   d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

   e. An order requiring the Defendant to maintain the required accessible features at the Subject Property as required by the CADA to cease its discriminatory practices.

   f. Other relief that this Court deems just and proper and is allowable under the CADA.

Respectfully submitted on this 22nd day of October 2022,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Direct (609) 319-5399
Office (609) 236-3211
Fax (609) 900-2760
js@shadingerlaw.com
Attorney for Plaintiffs,
*John Meggs and Access 4 All, Inc.*